UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA,
INDIANAPOLIS DIVISION

| | |
|---|---|
| KEMONI JONES, by<br><br>    Plaintiff,<br><br>    *vs*.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>    Defendant. | CAUSE NO. 1:16-cv-276-SEB-DKL |

REPORT AND RECOMMENDATION

Kemoni Jones sued for judicial review of the Commissioner of Social Security's denial of his application for child disability benefits under the Social Security Act. The district judge referral the issues to the undersigned magistrate judge for submission of a report and recommended disposition, *Order Referring Issues to Magistrate Judge* [doc. 16], and this entry fulfills that referral.

Standards

Judicial review of the Commissioner's factual findings is deferential: courts must affirm if her findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir.2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir.2003). Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir.2001). If the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence. *Richardson v. Perales*, 402

1

U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir.2004). This limited scope of judicial review derives from the principle that Congress has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir.2004). *Carradine*, 360 F.3d at 758. While review of the Commissioner's factual findings is deferential, review of her legal conclusions is *de novo*. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir.2010).

A child under the age of eighteen is eligible for SSI benefits if he has a medically determinable mental or physical impairment that causes marked and severe functional limitations and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(C)(i). A physical or mental impairment is one that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. *Id*. § 1382c(a)(3)(D). In determining whether impairments are disabling, the combined effect of all of the child's impairments must be considered, without regard to whether any single impairment alone is of disabling severity. 42 U.S.C. § 1382c(a)(3)(G).

By regulation, the Social Security Administration ("SSA") has determined that satisfaction of one of the Listings of Impairments for minors, 20 C.F.R. Part 404, Subpart P, Appendix 1, Part B, fulfills the statutory requirement that a child's impairment or combination of impairments "results in marked and severe functional limitations." The Listing of Impairments, Part B, is a compilation of medical conditions, divided into fourteen major body systems, that the SSA has pre-determined are disabling in children. 20 C.F.R. § 416.925. In general, each listed condition is defined by two sets of criteria: first, diagnostic findings that substantiate the existence of a listed condition and, second, sets of related functional limitations that substantiate the condition's disabling severity. *Id*. A child's impairment or group of impairments can satisfy a listed condition in three ways: by meeting all of the listed criteria for the condition, 20 C.F.R. § 416.925(c)(3); by medically equaling the criteria, *id*. § 416.925(c)(5); or by functionally equaling the criteria, *id*. § 416.926a(a).

A child's impairment *meets* a listed condition only when it satisfies all of the criteria of the listing. 20 C.F.R. § 416.925(c)(3) and (d). A child's impairment *medically equals* a listed condition when it is at least equal in severity and duration to the criteria of a listed condition. *Id*. § 416.926(a). Medical equivalence will be found in one of three ways: **(1)** the child's impairment, although listed, is lacking one or more of the medical or severity criteria, but other findings related to the impairment are of at least equal medical significance to the listed criteria, id. § 416.926(b)(1); **(2)** the child's impairment is

3

not a listed condition but the impairment's medical and severity findings are of at least equal medical significance to a closely analogous listed condition, *id.* § 416.926(b)(2); or **(3)** the child has a combination of impairments, no one of which equals a listed condition, but the combined impairments' medical and severity findings are of at least equal medical significance to a listed condition, *id.* § 416.926(b)(3).

A child's impairment or combination of impairments will *functionally equal* a listed condition when it is of listing-level severity, which the SSA has defined to mean that the child's impairments result in a "marked" limitation in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). The six domains of functioning are: (1) acquiring and using information, (2) attending to and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for self, and (6) health and physical well-being, *id.* § 416.926a(b)(1). The SSA has listed certain activities criteria within each domain and their normal levels of performance at different age groups. *Id.* § 416.926a(g)-(l). In general, a "marked" limitation exists when a child's impairment or combination of impairments "interferes seriously with [her] ability to independently initiate, sustain, or complete activities" within a particular domain. It is a limitation that is "more than moderate" but "less than extreme," and is the level of functioning that is expected with scores that are more than two, but less than three, standard deviations below the mean on standardized tests. *Id.* § 416.926a(e)(2). An "extreme" limitation is one that interferes "very seriously" with a

child's ability to perform activities within a domain. It is "more than marked," and is the level of functioning that is expected with scores at least three standard deviations below the mean on standardized testing. *Id*. § 416.926a(e)(3).

The SSA has established a three-step sequential process for evaluating child-disability claims. 20 C.F.R. § 416.924. If disability eligibility can be determined at any step in the sequence, an application will not be reviewed further. *Id*. § 416.924(a). At the first step, if the child is engaged in substantial gainful activity, *i.e.*, is earning money, then he is not disabled. *Id*. § 417.924(b). At the second step, if the child's impairments, or combination of impairments, are not severe, then he is not disabled. A severe impairment or combination of impairments is one that causes "more than minimal functional limitations." *Id*. § 416.924(c). Third, the child's impairments, either singly or in combination, must satisfy the criteria of at least one of the conditions included in Part B of the Listings of Impairments. *Id*. § 416.924(d). The applicant bears the burden of proof at each step of the process. If a child's impairments pass all three steps, and satisfies the duration requirement, then he is determined to be disabled.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a disability examiner and a physician or other medical specialist. If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts. If the application is denied again, then the applicant may request a hearing before

an administrative law judge ("ALJ").[1] An applicant who is dissatisfied with the decision of the ALJ may request the SSA's Appeals Council to review the decision. If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review. 42 U.S.C. § 405(g). If the Appeals Council affirms the ALJ's decision or declines to review it, then the ALJ's decision becomes the final decision of the Commissioner for judicial review.

**Background**

Mr. Jones' mother applied for benefits on his behalf in July 2012. She alleged that he was disabled due to a learning disability and asthma, (R. 142), with a disability-onset date of August 1, 2004, (R. 108, 139, 142). After the application was denied on initial administrative review in October 2012, the SSA appointed Mr. Jones's present counsel as his representative. (R. 62, 68.) After the application was denied on reconsideration review in January 2013, (R. 63), Mr. Jones requested and received a hearing before an ALJ in June 2014, during which Mr. Jones and his mother testified, (R. 34). The ALJ issued his decision denying the application in July 2014. (R. 14.)

At step one of the sequential evaluation process, the ALJ found that Mr. Jones had not engaged in substantial gainful activity since his application date. At step two, the

---

[1] By agreement with the SSA, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration. 20 C.F.R. Part 404, Subpart Q (§ 404.1601, *et seq.*). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal SSA.

ALJ found that Mr. Jones had the severe impairments of learning disability, asthma, and speech/language disorder.  At step three, he found that Mr. Jones's impairments, severe and non-severe, singly and in combination, did not meet, medically equal, or functionally equal the criteria or severity of any of the conditions in the listing of impairments.  Based on these findings, the ALJ found that Mr. Jones was not disabled.

In December 2015, the Appeals Council denied Mr. Jones's request to review the ALJ's decision, (R. 1), which rendered the ALJ's decision the final decision of the Commissioner on his claim for benefits and the decision that the Court reviews.

At the time that his mother submitted the application for benefits, Mr. Jones was a few days shy of his sixteenth birthday and was in the eighth grade of school, (R. 144). He became an adult in August 2015, after the ALJ issued his decision and before the Appeals Council denied review.

## Discussion

Mr. Jones argues three errors in the ALJ's decision.

**1. The ALJ ignored part the October 26, 2012, school functional evaluation.**

Shortly after Mr. Jones applied for benefits, the state agency sent a functional-capacity questionnaire to his high school that asked for ratings of his capacity for various functions within each of the six functional domains.  The questionnaire was completed

by Fiona Cary, who identified herself as Mr. Jones's "Teacher of Record."[2] (R. 160.) She wrote that she "help[s] Kemoni in his 8th grade math class" and that he would often call her over and she would "re-teach what the general education teacher has taught usually 3-4 times," (R. 154).

Mr. Jones argues that the ALJ ignored Ms. Cary's questionnaire ratings when he found that Mr. Jones has a less-than-marked limitation in the functional domain of attending and completing tasks. *Plaintiff's Brief in Support of Complaint To Review Decision of Social Security Administration* [doc. 23] ("*Plaintiff's Brief*"), at 8. Mr. Jones contends that the ALJ's failure to consider Ms. Cary's ratings in this domain caused him not to find a "marked" limitation. *Id.* Because the ALJ already had found a "marked" limitation in the domain of "acquiring and using information," (R. 22-23), adopting Ms. Cary's ratings would have provided the second "marked" domain limitation that is required to establish functional equivalence to the listing of impairments and, therefore, Mr. Jones' disability, *Plaintiff's Brief*, at 8. Mr. Jones argues that, just as the ALJ "reviewed" Ms. Cary's questionnaire ratings in the domain of acquiring and using information and found a marked limitation, he should have considered her ratings in the domain of attending and completing tasks and found a marked limitation. *Id.*, at 8.

---

[2] A "teacher of record" is a special-education teacher to whom a student with a disability is assigned. The teacher of record participates in the development and revision of the student's individualized education plan ("IEP"); is responsible for facilitating and monitoring the provision of services required in the student's IEP; and participates in re-evaluations of the student. 511 Ind. Admin. Code 7-32-97.

In discussing his finding that Mr. Jones has a marked limitation in the domain of acquiring and using information, the ALJ assigned "great weight" to the opinions of Drs. Presser and Unversaw, state-agency psychological consultants, because he found that their opinions were "supported by objective clinical findings and the substantial medical evidence of record." (R. 23.) Both consultants had found a marked limitation. (R. 232, 272.) The ALJ also cited and relied on Ms. Cary's questionnaire ratings of an "obvious problem" in Mr. Jones's abilities in this domain, and on her comment that Mr. Jones "struggles greatly with academic content." (R. 23, 154.)

When discussing the domain of attending and completing tasks, the ALJ again cited the opinions of the state-agency psychologists and, contrary to Mr. Jones's argument, he also cited Ms. Cary's ratings. He noted that the state-agency psychologists were divided: Dr. Pressner found that Mr. Jones has no limitation in this domain and Dr. Unversaw found that he has a less-than-marked limitation, (R. 24), but he assigned "greater weight" to Dr. Unversaw's opinion specifically because "it is supported by the teacher's report and the substantial evidence of record," *id*. The ALJ specifically mentioned Ms. Cary's comments that Mr. Jones has difficulty following multiple steps in one activity, that he is extremely unorganized, and that he often does not turn in his homework. *Id*. The ALJ clearly did not "ignore" this page of Ms. Cary's questionnaire, as Ms. Jones argues.

9

Mr. Jones asserted that, "[i]f anything," his impairment is more severe in this domain (presumably, more severe than the marked limitation that the ALJ and Ms. Cary found in the domain of acquiring and using information) because his failure to do class work or homework, skipping classes, attendance problems, and refusal to stay in the classroom were the primary reasons he was in special education. *Plaintiff's Brief*, at 8. Whether these "primary reasons" for Mr. Jones' assignment to special education amount to a marked limitation in attending and completing tasks is not a decision that the Court can make and Mr. Jones points to no expert medical opinion that these facts show a marked limitation. The ALJ found that Mr. Jones has a less-than-marked limitation in this domain based on the expert state-agency opinions, Ms. Cary's non-expert evaluation, (R. 24), and the expert opinion of Dr. Brandon Robbins, a clinical psychologist who performed a mental-status examination of Mr. Jones on request of the state agency, who, the ALJ noted, found that Mr. Jones "was attentive of the tasks required of him" and that his "attention and concentration were within limits throughout the examination," (R. 24, 261). Mr. Jones has not asserted or shown any errors in the opinions of the state-agency psychologists or the consulting psychologist; he has not identified any contrary expert medical opinion; and, thus, he has shown no errors in the ALJ's finding regarding this domain.

Of the thirteen activities rated under this domain on the questionnaire completed by Ms. Cary, she reported that Mr. Jones has "No Problem" in eight, a "slight problem"

in one, an "obvious problem" in two, a "serious problem" in two, and a "very serious problem" in none. (R. 155.) Including Ms. Cary's brief narrative description of Mr. Jones's difficulties in this domain, the Court cannot conclude that her ratings, in the context of the expert medical opinions, demonstrates or suggests that the ALJ's finding of a less-than-marked limitation is not supported by substantial evidence.

Mr. Jones has not shown error in the ALJ's finding.

**2. The ALJ ignored, misstated, or rejected all of the evidence proving disability.**

The above heading is virtually the entirety of Mr. Jones' argument: "The ALJ ignored, without explanation, misstated or rejected all of the evidence which proved the claimant's total disability." *Plaintiff's Brief*, at 9. There follows a series of legal principles and conclusory assertions:

> It is reversible error for an ALJ to select and discuss only the evidence that favors his denial decision . . . .
>
> The ALJ's decision must be reversed because it fails to build an accurate and logical bridge from all of the evidence in the record to his conclusions.
>
> Seventh Circuit cases are consistent that ALJ denial decisions will be reversed where the ALJ fails to consider evidence contrary to the denial decision and fails to explain the omission . . . .
>
> The ALJ's decision must be vacated and remanded because it is contrary to the special education-psychiatric treatment evidence, and is plainly erroneous . . . .

*Plaintiff's Brief*, at 9-10 (citations omitted). Only case citations have been omitted from this quotation. Mr. Jones's argument is perfunctory and, as with all such factually and

11

legally undeveloped arguments, is forfeited. *See Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013); *X. K. S. P. v. Colvin*, No. 1:15-cv-1831-DKL-TWP, *Entry on Judicial Review*, 2016 WL 4708589, *3 (S.D. Ind., Sept. 9, 2016).

Mr. Jones has not shown error.

**3. The ALJ failed to obtain expert medical opinion regarding medical equivalence.**

Mr. Jones argues that the ALJ's "denial decision must be reversed because the ALJ failed to summon a medical advisor to provide an informed basis for determining whether the claimant was disabled due to [his] combined impairments." *Plaintiff's Brief*, at 11. Specifically, he argues that (1) "the ALJ's failure to summon a medical advisor (psychologist) to testify whether the claimant's combined psychological impairments medically equaled any Listed impairment such as 112.01 requires reversal of the denial decision," *id.*, and (2) the ALJ erred because he "cited no evidence regarding medical equivalence to a Listing but also simply assumed (R. 17-18) that the claimant's combined impairments did not medically equal any Listing," *id.*, at 12.

While the ALJ's explanation of his finding regarding medical equivalence is not as extensive as one might wish, it is sufficient for the Court to trace his reasoning and, regardless, Mr. Jones failed to present any developed factual or legal argument showing that his combined impairments medically equal listing 112.02 or any other listing. First, the record contains expert medical opinion on the issue of medical equivalence. Dr.

Pressner and Dr. Unversaw, clinical psychologists with the state agency, reported their separate opinions that Mr. Jones's impairments or combination of impairments do not medically equal the listings, (R. 270, 290), and the ALJ's decision demonstrates that he was aware of and considered both of their reports, (*e.g.*, R. 22-28). Second, Mr. Jones did not attempt to show how specific evidence establishes that the severity of his mental impairments medically equal the severity of listing 112.02 or any other listing.

Mr. Jones has not shown error in the ALJ's medical-equivalence finding.

**Conclusion**

This magistrate judge recommends that the decision of the Commissioner be affirmed.

**Notice regarding objections**

Within fourteen days after being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2). A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3). Failure to file an objection might result in forfeiture of the right to de novo determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010); *Schur v. L. A. Weight Loss Centers, Inc.*, 577 F.3d 752, 761 n. 7 (7th Cir. 2009); *Kruger*

*v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000); *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**DONE this date:** 1/27/2017

*[signature: Denise K. LaRue]*

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.